## SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

This Settlement Agreement and Release of Claims (the "Agreement") is between Roy Fry himself, his heirs, estates, executors, administrators, representatives and assigns (collectively, the "Employee") and Thryv, Inc. and/or its parent, subsidiaries and affiliates (collectively, the "Company"). The signatories to this Agreement are referred to jointly as the "Parties."

This Agreement is a compromise between the Parties for the complete and final settlement of all claims, differences and causes of action, now known or unknown, between them.

### RECITALS

**WHEREAS**, Employee filed a civil action in the United States District Court for the Eastern District of Missouri, Case No. 4:21-cv-00283-MTS ("Complaint"), in which Employee alleged that the Company was unjustly enriched and violated the Fair Labor Standards Act ("FLSA") and Missouri Revised Statute § 290.500 *et. seq.* by failing to pay Employee wages and overtime for hours he worked for the Company (the "Wage Claim"). Employee also alleges that he was entitled to liquidated damages equal to the amount of unpaid wages (the "Liquidated Damages Claim").

**WHEREAS**, the Company denies the allegations asserted by Employee as set forth in the Complaint. The Company believes that Employee was properly compensated under the FLSA and Missouri law and, therefore, that Employee is not entitled to overtime pay or any other compensation. The Company believes that it acted in good faith and, therefore, that Employee is not entitled to liquidated damages.

**WHEREAS**, by this Agreement, the Parties desire to settle, fully and finally, the claims that could arise under the FLSA and Missouri Revised Statute § 290.500 *et seq.*; and

**WHEREAS**, the Parties have also separately negotiated and reached an agreement on a general release of claims and confidentiality specifically related thereto.

**NOW, THEREFORE**, in consideration of the foregoing recitals and the mutual terms, covenants, and conditions hereinafter set forth, the Parties agree as follows:

1. **Settlement Amount**. As consideration of the mutual covenants and promises herein contained and other good and valuable consideration, including Employee's release of Employee's Wage Claim, Liquidated Damages Claim, and general release of claims as specified in this Agreement, the Company will pay Employee and Employee's attorneys the gross sum of ▮▮▮▮▮▮ (the "Settlement Amount").

   The Parties agree that the Settlement Amount will be paid as follows:

   a.  The Company will pay Employee the gross amount of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ as full compensation for Employee's Wage Claim. All necessary deductions and withholdings will be

1

      made from this payment, and this amount will be reported on a Form W-2 issued to Employee.

   b. The Company will pay Employee the gross amount of ■■■■■■■■■■■■■■■■■■■■■■ as full compensation for Employee's Liquidated Damages Claim. No withholdings will be made from this payment, and this amount will be reported on a Form 1099 issued to Employee.

   c. The Company will pay Williams Dirks Dameron LLC the gross amount of ■■■■■■■■■■■■ for attorney's fees and costs. No deductions or withholdings will be made from this payment, and this amount will be reported on a Form 1099 issued to Williams Dirks Dameron LLC.

The consideration set forth above is in full and complete settlement of Employee's claims under the FLSA and Missouri law as alleged in the Complaint. Section 1(a) and 1(b) of Settlement Amount shall be due and payable to Employee. Section 1(c) of Settlement Amount shall be due and payable to Williams Dirks Dameron LLC. Employee and Employee's counsel agree not to seek any additional attorneys' fees, costs or expenses from the Company in connection with the matters alleged in the Complaint.

The Parties agree that Employee will submit a Joint Motion to Approve the Settlement Agreement ("Motion") to the Court within five (5) business days of receiving a fully-executed copy of this Agreement.

2. **Release of Claims by Employee.** In consideration of the Settlement Amount described in Section 1 of this Agreement, Employee releases and discharges the Company from any liability for claims and damages allegedly arising under the FLSA, including the Liquidated Damages Claim, Missouri Revised Statute § 290.500 *et seq.*, and any other claims brought under Federal or State law.

3. **Payment Schedule.** The Settlement Amount will be paid within ten (10) business days of the Court's approval of the settlement agreement and provision of the necessary w-4 and w-9 forms from Employee and w-9 form from Employee's counsel.

4. **Court Approval and Dismissal.** This Agreement is contingent upon the Court's approval of this settlement under the Fair Labor Standards Act and the actual dismissal of the Lawsuit with prejudice. The Parties agree to cooperate in seeking such Court approval. Employee agrees that upon the Court's approval of this Agreement, his counsel shall promptly execute a Joint Stipulation of Dismissal for filing with the Court. If the Court refuses or fails to approve settlement or to dismiss the entire Lawsuit with prejudice, this Agreement shall be null and void and the Consideration set forth in Section 1 must be returned to Company.

5. **Tax Liability.** In paying the amount specified in Section 1, Company makes no representation regarding the tax consequences or liability arising from said payments. Employee understands and agrees that any and all tax liability that may be due or become due because of the payments referenced above is Employee's sole responsibility, and that he will pay any such taxes that may be due or become due. Employee agrees to bear all tax consequences, if any, attendant upon the payment to Employee of the Settlement Amount. Employee further agrees to hold Company harmless from and against all valid tax or tax withholding claims, amounts, interest, penalties, fines or assessments finally determined to be valid by any taxing authority or governmental agency with regard to the Settlement Amount. In the event Company receives written notice that any claim or assessments for taxes, withholding obligations, penalties and/or interest arising out of this settlement are being or will be made against Company, Company shall promptly, after receipt of such written notice, notify Employee by letter sent to counsel for Employee.

6. **General Release by Employee.** In consideration of the Settlement Amount described in Section 1 of this Agreement, Employee (for the Employee, Employee's agents, assigns, heirs, executors, and administrators) releases and discharges the Company (including its officers, owners, principals, members, employees, agents, representatives, attorneys, or officers) from any and all charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts, and expenses (including attorneys' fees and costs actually incurred), of any nature whatsoever, known or unknown, in law or equity which arose at any time from the beginning of time to the date Employee executes this Agreement (the "Released Claims"). Without limiting the foregoing general release, Employee understands that this general release applies, but is not limited, to: all claims arising out of Employee's employment relationship with the Company, the cessation of that employment, the compensation or benefits payable in connection with that employment or the cessation of that employment and/or any other interaction with Company, including, without limitation, (a) Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), *et seq.*; (b) The Americans With Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq.*; (c) The Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.*; (d) The Equal Pay Act, as amended, 29 U.S.C. § 206, *et seq.*; (e) The Lilly Ledbetter Fair Pay Act of 2009; (f) The Family and Medical Leave Act of 1993, as amended, 29 U.S.C. § 2601, *et seq.*; (g) The National Labor Relations Act, 29 U.S.C. § 151, *et seq.*; (h) The Employee Retirement Income Security Act, as amended, 29 U.S.C. § 1001 *et seq.*; (i) The Fair Credit Reporting Act, as amended, 15 U.S.C. § 1681 *et seq.*; (j) The Civil Rights Act of 1866, 42 U.S.C. § 1981 *et seq.*; (k) The Fair Labor Standards Act, as amended, 29 U.S.C. § 201, *et seq.* (the "FLSA"); (l) The Occupational Safety and Health Act, as amended, 29 U.S.C. § 651, *et seq.* ("OSHA"); (m) the Missouri Human Rights Act, Mo. Rev. Stat. § 213.010 *et seq.*; (n) Missouri Minimum Wage Law, Mo. Rev. Stat. § 290.500 *et seq.*; (o) Missouri Wage Payment and Work Hour Law; (p) any agreement, representation, promise, understanding, policy, practice, plan, or potential entitlement (regardless of the source); (q) past or future wages, severance, compensation, vacation pay, holiday pay, meal or rest breaks, overtime, benefits, bonuses, commissions, fringe benefits, reimbursement of expenses, or other forms of consideration, payment, or remuneration, except for claims to enforce payment of those sums explicitly identified in

Section 1; (r) breach of contract; (s) intentional and/or negligent infliction of emotional distress; and (t) any other federal, state, or local law, whether arising or emanating from statute, executive order, regulation, code, common law, or other source, including, but not limited to, all actions sounding in tort, contract, and/or any doctrine of good faith and fair dealing.

Employee further waives any and all rights to participate in a class or collective action alleging violations of any laws, including those brought under the FLSA, Missouri Minimum Wage Law, and/or Missouri Wage Payment and Work Hour Law, and Employee further covenants and agrees not to accept, recover or receive any back pay, front pay, liquidated damages, other damages or any form of relief based upon any claims that have been asserted or could have been asserted or settled in a lawsuit that may arise out of, or in connection with, any other individual, class or administrative remedies pursued by any state or local governmental agency against Company.

This Section shall not apply to any provision of this Agreement that may be interpreted to waive, release, or extinguish any rights that, by express and unequivocal terms of law, may not under any circumstances be waived, released, or extinguished, including any other claim which cannot be released by private agreement.

7. **FLSA Release By Employee.** Employee hereby releases and forever discharges the Company from any and all Fair Labor Standards Act, and state equivalent, claims. Employee further represents that Employee does not believe, and is aware of no evidence suggesting that, the Company has failed to comply with the Fair Labor Standards Act, or any state law equivalent, that were not claimed in the Lawsuit. Employee acknowledges that Company is relying on the accuracy of this representation as a material term of this Agreement. Specifically, Employee agrees that he is releasing and waiving his right to bring suit against the Company for legal or equitable relief, or both, regarding any claim for unpaid minimum wage and/or overtime, as well as any claim for liquidated damages associated therewith. Employee and Company agree that the Agreement is reasonable and it is not necessary for the Court to review the reasonableness of the Agreement. However, to the extent that the Court finds approval of this Agreement is necessary, Employee will file a Joint Motion for Settlement Approval and a Proposed Order Approving Settlement with the Court within 15 days of the Court's Order. If the Court then fails to approve this Agreement in its entirety, or if Employee objects to the settlement or withdraws from the settlement, the Company may rescind this Agreement. If the Company rescinds, then: (i) its obligations under this Agreement will cease to have any force and effect; (ii) the Agreement will be vacated, rescinded, canceled, and annulled; (iii) the Parties will return to the status quo ante as if they had not entered into this Agreement; (iv) the settlement and all negotiations and proceedings related to the settlement are without prejudice to the Parties' rights; and (v) all evidence of the settlement, negotiations, and proceedings will be inadmissible and will not be discoverable. The Company may exercise its right to rescind the settlement by filing a Notice of Rescinding Settlement with the Court.

8. **Specific Release of Age Claims.** The Released Claims include any and all claims which Employee may have arising under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.* ("ADEA"). Employee is advised to consult with an attorney about his waiver of rights and claims under the ADEA. Employee understands that by signing this Agreement, Employee waives his right or claims under the ADEA, if any. Employee further understands that he is not waiving his rights or claims under the ADEA that may arise after the Effective Date of this fully-executed Agreement.

In accordance with the Older Workers Benefit Protection Act of 1990 ("OWBPA"), Employee acknowledges, and agrees to, the following terms:

   a. Employee has carefully read and fully understands all of the provisions of this Agreement and has entered into this Agreement knowingly and voluntarily;

   b. Employee is advised to consult, and has in fact consulted, with an attorney before signing this Agreement;

   c. Employee protected by the ADEA has a period of up to twenty-one (21) days from receipt of this Agreement to consider whether Employee wishes to execute this Agreement;

   d. Employee acknowledges that any changes to this Agreement, whether material or immaterial, do not cause the reconsideration period to restart; and

   e. Employee protected by the ADEA has a period of seven (7) days, commencing with the day after the date of Employee's signature on this Agreement, to revoke his signature and to cancel Employee's agreement to waive his rights under the ADEA ("Revocation Period"). To revoke, Employee must notify Company in writing of the revocation within the seven (7) day period addressed to Company's counsel, identified below. This Agreement shall not be effective and no payments shall be made hereunder unless and until the Revocation period has expired without revocation by Employee.

9. **Non-disparagement.** Employee agrees not to criticize, denigrate, or otherwise disparage or cause disparagement, or make any disparaging remarks in any way relating to her employment with Company or her lawsuit against Company ("Disparage"), to the media, the general public, or to any other person or entity about Company. In particular, but without limitation, Employee will not Disparage Company to any of Company's current, former, or prospective customers or any of Company's current or former employees. Employee acknowledges that this provision constitutes a material term in this Agreement, without which Company would not enter into this Agreement. Employee agrees any breach of this non-disparagement provision will necessarily cause Company to suffer

some injury and that the damages to Company arising from such a breach are likely to be difficult to quantify.

10. **Confidentiality.** By executing this Agreement, Employee represents and warrants that Employee has not, as of the date he signs this Agreement, disclosed to anyone, except Employee's attorneys, or Employee's spouse, the existence of this Agreement, the amount of the settlement payments and the other terms of this Agreement, the circumstances giving rise to the execution of this Agreement, or the negotiations leading to this Agreement. Employee understands and agrees that all discussions, negotiations and correspondence relating to this Agreement and the terms thereof (collectively "Confidential Settlement Information") are strictly confidential and that this confidentiality provision is a material term of this Agreement. Employee agrees not to disclose to anyone (other than Employee's spouse, financial advisors, legal counsel and accountants) any Confidential Settlement Information unless such disclosure is (i) lawfully required by any government agency; (ii) otherwise required to be disclosed by law (including legally required financial reporting) and/or by court order; or (iii) necessary in any legal proceeding in order to enforce any provision of this Agreement. Employee may respond to any inquiry about the status and/or resolution of this litigation by stating that the matter has been resolved to the mutual satisfaction of the Parties. If Employee discloses Confidential Settlement Information to Employee's spouse, financial advisors, counsel or accountant, Employee will make such person aware of the confidential nature of this information.

11. **No Application or Rehire.** Employee agrees that he is not currently employed by the Company. Employee agrees that he will not apply for or otherwise seek employment with the Company at any time in the future. In the event Employee seeks employment or assignment/contract to work with the Company, whether by responding to an advertisement or any other form of solicitation or recruitment or otherwise, Employee agrees that his response, application, assignment, or request for employment shall be deemed null and void, as if never made. In the event that, in contravention of the provisions of this Section, Employee is assigned to or hired or reinstated as an employee, or retained as a contract worker, by the Company, Employee agrees that this Section provides grounds for Employee's immediate termination without any legal recourse.

12. **Representations, Warranties and Affirmations.** Employee represents, warrants, and affirms that he has no suits, claims, charges, complaints or demands of any kind whatsoever currently pending against Company with any local, state, or federal court or any governmental, administrative, investigative, civil rights or other agency or board. Employee represents, affirms and warrants that he has not filed any charge, complaint or action against Company with OSHA, the EEOC, the NLRB or any other Federal, State or local agency or board. However, nothing in this Agreement prevents Employee from doing so. Employee acknowledges that any such charge may not result in any monetary settlement to him. Employee further represents and affirms as a material term of this Agreement that he has been paid and/or received all leave (paid or unpaid), compensation, wages, bonuses, commissions, and/or benefits to which he may be entitled

and that no other leave (paid or unpaid), compensation, wages, bonuses, commissions, and/or benefits are due to him, except as provided for in this Agreement.

13. **Disclaimer of Liability.** Nothing in this Agreement shall constitute or be construed as an admission of liability or wrongdoing by either Party. Each Party expressly denies that it has done anything wrong or unlawful.

14. **Remedies for Breach.** Should any Party prevail in any action brought against the other to enforce the terms of this Agreement, or to recover damages for breach of this Agreement, or to collect the Settlement Amount to be paid by Company under this Agreement, the prevailing Party shall be entitled to recover its reasonable attorneys' fees incurred in the action, along with costs and damages. In addition to all other rights and remedies Company may have at law or in equity, if Employee files a civil action or regulatory claim against Company alleging any of the claims released herein, Employee acknowledges that he will not be entitled to any monetary damages. Each Party further understands and acknowledges that the Confidentiality (Section 10), Non-disparagement (Section 9), and the payment schedule of the Settlement Amount (Section 3) provisions are material terms of the Agreement and constitute consideration of the Agreement. Each Party acknowledges and agrees that the non-breaching Party would be irreparably harmed if the breaching Party breaches any of these provisions and that the amount of damages that would result from such a violation may be difficult or impossible to ascertain.

15. **Integration.** This written Agreement contains the entire agreement of the Parties regarding the settlement of Employee's claims contained in Employee's Complaint and the Parties' general release of claims. This Agreement may not be changed orally but only by an agreement in writing signed by the Party against whom enforcement of any waiver, change, modification, extension, or discharge is sought. The Parties acknowledge that each Party has not relied upon any representations or promises except as set forth herein and has not relied upon the other Party or its counsel for any advice on or interpretation of the legal or tax implications of this Agreement. By signing below, the Parties acknowledge receipt of a copy of this Agreement. Each Party has been advised to seek the advice of a Certified Public Accountant or other tax advisor to insure and review the Agreement and to advise each Party concerning how all of the terms and conditions set forth therein may affect their future tax liabilities. The Parties hereto hereby acknowledge and agree that each has had the opportunity to retain its, his or her own Certified Public Accountants, tax advisor or tax attorney with reference to the tax implications of this Agreement. Further, the Parties hereby acknowledge that they have not relied upon the tax implications of this Agreement. Further, the Parties acknowledge and agree that their signatures to this Agreement serve as the acknowledgment that they have read this particular paragraph and that they have had the opportunity to seek independent advice. All Parties acknowledge that its, his or her attorney provided them no tax advice and they have not relied on any representations of their lawyer in providing tax advice.

16. **Severability.** Should any clause of this Agreement be found void by a court of law, with the exception of the requirement that the Company pay Employee and Employee's

7

counsel the Settlement Amount set forth in Section 1 and the Employee's waiver of claims, that fact shall not impair the remainder of this Agreement.

17. **Governing Law.** This Agreement shall be interpreted and enforced in accordance with the laws of the State of Missouri. The parties agree to and hereby do submit to jurisdiction before any state or federal court of record in St. Louis County, Missouri, subject to the right, if any, of either party to attempt to remove any claim arising under this Agreement to a United States District Court if said Court has jurisdiction.

18. **Construction of Agreement.** The Parties hereby confirm and agree that this Agreement is the result of negotiation and compromise and that in interpreting this Agreement no one party shall be considered to be the drafter of the document, and that the language should not be strictly construed against either party. Instead, the language of the Agreement should be interpreted in a manner consistent with the ordinary and reasonable meaning of the words used.

19. **Binding Effect.** This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, executors, administrators, officers, directors, shareholders, employees, agents, parent companies, subsidiaries, divisions, affiliates, related companies, successors, and assigns.

20. **Settlement Effective Date.** The Effective Date shall be the date on which the Court issues an Order granting approval of the confidential settlement and dismissing all claims with prejudice, with each Party to bear his or its own costs and attorneys' fees, unless otherwise provided herein.

21. **Expenses.** The Parties shall pay their own expenses, including, without limitation, any attorney fees, mediation fees, court costs, pleading preparation, legal and expert fees, or other expenses incurred for the negotiation, preparation, and execution of this Agreement, with the exception of the payment of the Settlement Amount by the Company to Employee and Employee's counsel referenced in Section 1.

22. **Counterparts.** This Agreement may be executed in identical counterparts, each of which shall constitute an original of this Agreement. For purposes of executing this Agreement, the Parties may execute and exchange signatures page by facsimile, electronic mail (via pdf), or by other such electronic signatures, such as DocuSign or similar electronic signing software, all of which shall be deemed to be originals and effective as manual delivery.

23. **Understanding and Voluntariness.** EACH PARTY REPRESENTS AND AGREES THAT THE PARTY HAS DISCUSSED ALL ASPECTS OF THIS AGREEMENT WITH THE PARTY'S COUNSEL, THAT THE PARTY HAS CAREFULLY READ AND FULLY UNDERSTANDS ALL OF THE PROVISIONS OF THIS AGREEMENT, AND THAT THE PARTY IS VOLUNTARILY ENTERING INTO THIS AGREEMENT.

**IN WITNESS WHEREOF**, the Parties hereto have caused this Agreement to be executed by their duly authorized representatives, and have executed and delivered this Agreement, as an agreement under seal, effective as of the Effective Date.

ROY FRY

_____
Signature: *Roy Fry*

Date: 12-28-21

THRYV, INC.

_____
Signature: *Lesley Bolger*

Title: EVP - Chief Legal Officer

Date: Dec. 31, 2021

49526101.1

9